**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fabio Evelio Gomez,<br>　　　　　Petitioner,<br>v.<br>David Shinn, et al.,<br>　　　　　Respondents. | No. CV-21-01529-PHX-MTL<br>**ORDER**<br><u>DEATH PENALTY CASE</u> |

Before the Court are Respondents' motions to bar Petitioner Fabio Evelio Gomez's defense team from contacting any juror in this case absent leave of Court based on a showing of good cause (Doc. 14), and to require the defense team to channel any request to contact a victim in this case solely through Respondents' counsel (Doc. 15). Gomez opposed both motions (Docs. 16, 17), and Respondents replied (Docs. 18, 19). For the reasons discussed below, the Court will grant both motions.

**I.    BACKGROUND**

In 2001, a jury convicted Gomez of first-degree murder, kidnapping, and sexual assault based on Gomez's attack on a neighbor at his apartment complex. *State v. Gomez* (*Gomez II*), 293 P.3d 495, 497 (Ariz. 2012). Before he was sentenced, the United States Supreme Court issued its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which required aggravating factors in capital cases to be found by a jury. *Id.* at 497–98. The trial court thus reset the matter for a jury sentencing. *Id.* A second jury found that the murder was especially cruel and depraved under A.R.S. § 13-751(F)(6) and determined that Gomez

should be sentenced to death. *Id.* The Arizona Supreme Court affirmed the conviction and sentence for sexual assault but vacated the death sentence and the sentence for kidnapping. *State v. Gomez (Gomez I)*, 123 P.3d 1131 (Ariz. 2005). On remand, a third jury found the (F)(6) factor and determined that Gomez should be sentenced to death. *Gomez II*, 293 P.3d at 498. The trial court resentenced him for the kidnapping. *Id*. The Arizona Supreme Court affirmed. *Id*. at 503.

After unsuccessfully pursuing post-conviction relief in state court, Gomez filed his intent to seek habeas relief from this Court. (Doc. 1.) The Court appointed counsel and ordered Gomez to file his habeas petition by July 8, 2022. (Docs. 5, 12.) Respondents subsequently filed the pending motions. (Docs. 14, 15.)

## II.     DISCUSSION

### A.     Juror Contact

Respondents ask the Court to prohibit Gomez's defense team from contacting "trial and resentencing jurors absent . . . leave of Court based on a showing of good cause to believe that juror misconduct occurred." (Doc. 14 at 4.) They argue that this bar will further the policy behind Federal Rule of Evidence 606(b)—to protect a jury verdict's finality and to promote full and candid jury deliberations—without unduly restricting the defense team's investigation. (*Id*. at 1–4). Gomez responds that such a bar would unreasonably restrict the team from investigating whether misconduct, racial bias, or jury tampering occurred. (Doc. 17 at 2–5.) He adds that no federal or state authority compels such a bar and that the ethical duties of his counsel will suffice to "protect jurors from harassment and intrusive inquiry." (*Id*. at 5–10.)

Judges of this District have taken different approaches to these requests. *Compare Ellison v. Ryan*, No. CV-16-08303-PCT-DLR, 2017 WL 1491608, at *2–3 (D. Ariz. Apr. 26, 2017) (finding no authority that requires a showing of "good cause" to contact jurors), *with Reeves v. Shinn*, No. CV-21-1183-PHX-DWL, 2021 WL 5771151, at *3 (D. Ariz. Dec. 6, 2021) (finding ample case law confirming that district courts may grant such requests and that there are "powerful reasons why district courts should exercise their

discretion in favor of such requests"), *and Harrod v. Ryan*, No. CV-16-02011-PHX-GMS, 2016 WL 6082109, at *3 (D. Ariz. Oct. 18, 2016) (granting request to the extent that it prevented petitioner from asking jurors about matters not admissible in evidence, but not about "extraneous influences on the jury," as no authority demands such a bar).

The Supreme Court has noted that "very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). In *Tanner*, the Court explained that post-verdict "investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior" but found that "[it] is not at all clear . . . that the jury system could survive such efforts to perfect it." 483 U.S. at 120. The Court noted that claims "raised for the first time days, weeks, or months after the verdict [would] seriously disrupt the finality of the process." *Id*. (citing *Gov't of the Virgin Is. v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985)). Moreover, an onslaught of post-verdict claims against jurors would undercut "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople. . . ." *Id*. at 120–21 (citing Note, Public Disclosure of Jury Deliberations, 96 Harv. L. Rev. 886, 888–92 (1983)); *see also McDonald v. Pless*, 238 U.S. 264, 267–68 (1915) (noting that public investigation of juror deliberations would cause "the destruction of all frankness and freedom of discussion and conference").

Courts "have long imposed restrictions on lawyers seeking access to jurors" following a verdict. *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020). These restrictions "(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further [Rule 606(b)] by protecting jurors from harassment and the jury system from post-verdict scrutiny." *Id*. (quoting *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003)). Known as the "no-impeachment rule," *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 865 (2017), Rule 606(b)(1) bars jurors from testifying, in general, about their deliberations. Fed. R.

Evid. 606(b)(1); *see Peña-Rodriguez*, 137 S. Ct. at 865 (noting that the rule "promotes full and vigorous discussion" and "gives stability and finality to verdicts").

That is not to say that Rule 606(b) prohibits all post-verdict juror testimony. Rule 606(b)(2) allows jurors to testify about exposure to "extraneous prejudicial information" and "outside influence," as well as mistakes in "entering the verdict on the verdict form." Fed. R. of Evid. 606(b)(2). Evidence of a juror's "clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant" is also admissible. *Peña-Rodriguez*, 137 S. Ct. at 869.

Absent those exceptions, the Ninth Circuit "condemn[s] the practice of interviewing jurors on the course of their deliberations in the jury room." *Bryson v. United States*, 238 F.2d 657, 665 (9th Cir. 1956); *see also N. Pac. Ry. Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954) (holding this practice to be "improper and unethical"); *Harrod*, 2016 WL 6082109, at *2 (citing *Mely*, 219 F.2d at 202; *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980); *Com. v. Moore*, 52 N.E.3d 126 (Mass. 2016)) (stating that "investigation directed at discovering the inadmissible considerations of motives and influences that led to a juror's verdict . . . is inappropriate and unethical").

Courts of this Circuit, in fact, must "protect jurors from the annoyance and harassment of such conduct." *Bryson*, 238 F.2d at 665. This Circuit therefore discourages post-verdict juror interviews. *See Hard v. Burlington N. R.R.*, 812 F.2d 482, 485 (9th Cir. 1987) (citing *Traver*, 627 F.2d at 941; *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)), *abrogated on a different ground in Warger v. Shauers*, 574 U.S. 40, 44–45 (2014).

Thus, this Court does not abuse its discretion or violate the Constitution by barring post-verdict juror interviews without a showing of good cause. *Mitchell*, 958 F.3d at 787 (citing *United States v. Eldred*, 588 F.2d 746, 752 (9th Cir. 1978); *Smith*, 457 F.2d at 1100). Other Circuits take this approach. *See United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007); *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985); *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976). Although the Ninth Circuit has "not joined other courts in" banning evidence from post-verdict juror interviews without leave of court, it

"believe[s] the better practice is" to seek such leave. *Hard*, 812 F.2d at 485 & n.3 (citing *Maldonado v. Mo. Pac. Ry. Co.*, 798 F.2d 764, 769 (5th Cir. 1986); *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985)).

Further, "very cogent reasons," beyond those expressed in *Tanner*, support a requirement that good cause be shown before a juror may be contacted. These reasons include "protecting the jury from post-verdict misconduct and the courts from time-consuming and futile proceedings; reducing the chances and temptations for tampering with the jury; and increasing the certainty of" verdicts. *See Wilkerson v. Amco Corp.*, 703 F.2d 184, 185–86 (5th Cir. 1983) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1310 n. 4. (5th Cir. 1977)) (internal quotations omitted) (noting civil verdicts).

In sum, ample case law reveals "powerful reasons" why this Court should grant Respondents' request.[1] *See Reeves*, 2021 WL 5771151, at *3. In addition, this Court has "'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (quoting *Calderon v. U.S.D.C.*, 98 F.3d 1102, 1106 (9th Cir. 1996)) (noting that habeas "was never meant to be a fishing expedition for . . . petitioners to 'explore their case in search of its existence'").

Gomez claims that this Court need not grant the motion, as counsel's ethical duties will suffice to "protect jurors from harassment and intrusive inquiry." (Doc. 15 at 9–10.)

---

[1] Respondents cite Local Rule of Civil Procedure 39.2(b) and (c) to support their request. (Doc. 14 at 3.) Subsection (b) of this rule prohibits post-trial interviews with jurors absent good cause and the Court's oversight; subsection (c) relieves jurors from "communicat[ing] with anyone" about the trial in which they partook absent Court order. LRCiv 39.2(b) and (c). Neither subsection applies here. *See Harrod*, 2016 WL 6082109, at *2 (finding that Rule 39.2 applies to only trials in federal court based on the rule's language and Local Rule of Civil Procedure 39.1, which governs jury trials in this Court). Nor does Arizona law require leave of court. *See* Ariz. R. Evid. 606(b). Even so, "the absence of a rule is not dispositive, as the Court is no less concerned with the protection of state jurors than federal jurors, and has the discretion to address these concerns on a case by case basis." *Martinez*, 2020 WL 3574594, at *2.

- 5 -

But as the court noted in *Reeves*, "post-trial juror inquiries are inherently intrusive and potentially harmful, even if performed in a courteous and professional manner." *Reeves*, 2021 WL 5771151, at *3. This Court "has no doubt that" Gomez's defense team "would behave courteously, professionally, and in a dignified manner" to jurors in this case. *Id*. at *3 n.2. Still, if jurors know that they can be sought out years after trial and "asked questions about their service, such knowledge alone may" implicate the concerns addressed in *Tanner*. *Id*. at *3 (citing *Tanner*, 483 U.S. at 120–21; *Mitchell*, 958 F.3d at 787); *see also Peña-Rodriguez*, 137 S. Ct. at 869 (explaining that limits on contact with jurors "seek to provide jurors some protection when they return to their daily affairs")

      Gomez also claims that granting Respondents' request will unreasonably restrict his defense team from investigating whether misconduct occurred, implying that only through juror interviews will his team uncover such misconduct. (Doc. 15 at 2–5.) To support his claim, he notes that he "is a Black man, and the victim was a white woman"; that the Supreme Court has deemed "interracial violence" a factor "which might create an 'unacceptable risk of racial prejudice' within a capital sentencing jury"; and that jurors may hesitate "to volunteer" statements of racial animus unless a defense team "broach[es] the topic." (Doc. 17 at 5) (quoting *Turner v. Murray*, 476 U.S. 28, 36 n.8 (1986)).

      While the Court does not discount these concerns, the Supreme Court has found "that jurors 'may come forward of their own accord' to report racial bias notwithstanding rules prohibiting lawyers from initiating such contact, a practice that 'is common in cases involving juror allegations of racial bias.'" *Mitchell*, 958 F.3d at 789–90 (quoting *Peña-Rodriguez*, 137 S. Ct. at 869–70 [collecting cases]). Evidence, moreover, may arise from a source outside an interview. *See State v. Acuna Valenzuela*, 426 P.3d 1176, 1194 (Ariz. 2018) (finding that a juror's blog exposed a juror's "potential biases" at trial but not "racial animus toward Acuna"). The Court will consider any claim of racial animus in support of a motion for leave of Court to interview jurors.

      Finally, the passage of time in this case warrants attention. *See*, *e.g., Cota v. Ryan*, No. CV-16-03356-PHX-DJH, 2017 WL 713640, at *2 (D. Ariz. Feb. 23, 2017). Over two

decades have passed since a jury convicted Gomez of murder; more than eleven years have passed since a jury resentenced him to death. Again, this amount of time implicates *Tanner*'s "substantial concerns" about possibly disrupting "the finality of the judicial process. . . ." *See id.* at *2 (stressing that eight-plus years had passed since the jury issued its verdict).

Respondents' motion is granted.

### B.  Victim Contact

Respondents ask the Court to require that Gomez and his defense team channel any request to contact a victim in this case solely through Respondents' counsel. (Doc. 15.) They argue that the Court should grant this request under A.R.S. § 13-4433(B) of Arizona's Victims' Rights Implementation Act (VRIA) or 18 U.S.C. § 3771(a)(8) of the Crime Victim's Rights Act of 2004 (CVRA). (*Id.*) Gomez contends, among other things, that Respondents lack standing to enforce the CVRA, that the CVRA does not bar his defense team from asking the victims themselves for an interview, and that A.R.S. § 13-4433(B) does not apply to these proceedings. (Doc. 16.)

As with motions on juror contact, Judges of this District have tackled motions on victim contact differently. *Compare Chappell v. Ryan*, No. CV-15-00478-PHX-SPL (D. Ariz. July 21, 2015) (Doc. 19 at 2) (granting request because doing so furthers U.S.C. § 3771(a)(8)), *with Burns v. Shinn*, No. CV-21-1173-PHX-SPL, 2021 WL 5280601, at *1–2 (D. Ariz. Nov. 12, 2021) (denying request because respondents lack standing to enforce the CVRA and the VRIA in habeas proceedings, A.R.S. § 13-4433(B) does not apply to these proceedings, and 18 U.S.C. § 3771(a)(8) does not require the granting of the request), *and Medina v. Shinn*, No. CV-21-00889-PHX-GMS, 2022 WL 325707, at *1–3 (D. Ariz. Feb. 3, 2022) (denying request and instead, in furtherance of § 3771(a)(8), barring defense team from contacting a victim absent a victim-contact plan authorized by the Court).

The CVRA defines victims in federal habeas proceedings arising from a state conviction as a "family member or other lawful representative" of the person killed by the one who committed the state offense. 18 U.S.C. § 3771(b)(2)(D). The CVRA grants these

victims the "right to be treated with fairness and with respect for [their] dignity and privacy." *Id*. § 3771(a)(8) and (b)(2).[2]

At the outset, the standing doctrine does not prevent the Court from issuing the requested order under § 3771(a)(8) and (b)(2) because the Court must "ensure that" crime victims are "afforded the[ir] rights" under 18 U.S.C. § 3771(a)(8) in these proceedings. 18 U.S.C. § 3771(b)(1); *see also*, *e.g.*, *Reeves*, 2021 WL 5771151, at *5 (finding that based on this duty, "standing does not serve as an obstacle to the issuance of" an order precluding direct victim contact). "The Court takes this duty seriously." *Reeves*, 2021 WL 5771151, at *5.

Section 3771(a)(8) does not expressly bar defense teams from asking the victims themselves for interviews. *See* 18 U.S.C. § 3771(a)(8). Congress nonetheless deemed § 3771(a)(8)'s rights "broad rights." 150 Cong. Rec. S10911. The "broad language" of § 3771(a)(8), moreover, seeks "to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity." *United States v. Turner*, 367 F.Supp.2d 319, 335 (E.D.N.Y. 2005). As Senator Jon Kyl stressed in writing for the Lewis & Clark Law Review, "The legislative history is clear": "[T]hese rights . . . are intended to be expansive, enforceable, and not merely symbolic." Sen. Jon Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 Lewis & Clark L. Rev. 581, 613 (2005).

Consistent with this intent, in *Chappell*, the court granted a motion similar to the one here because, "[w]hether or not [A.R.S.] § 13-4433(B) directly applies to these proceedings, the mechanism it establishes furthers the goal of respecting a crime victim's dignity and privacy without unduly burdening [Chappell]." No. CV-15-00478-PHX-SPL

---

[2] Arizona Revised Statute section 13-4433(B) requires the defense to "initiate contact with . . . victim[s]" solely "through the prosecutor's office" as well as "[t]he prosecutor's office [to] promptly inform the victim of the" interview request and to "advise the victim of the victim's right to" deny the request. As explained below, the Court need not determine at this time whether this statute applies here.

- 8 -

(Doc. 19 at 2 (citing *Sansing v. Ryan*, No. 11-CV-1035-PHX-SRB (D. Ariz. Aug. 31, 2011) (Doc. 29)). In other words, the court held that granting the motion would further 18 U.S.C. § 3771(a)(8). *See id.*

This Court agrees with *Chappell*'s reasoning. This order will bar the defense team from initiating contact with victims without their prior consent. It allows the defense team direct access to a victim if the victim so consents. When a victim does not consent, it also provides a mechanism, through leave of the Court, for the team to request the Court's permission to interview the victim. The order thus ensures that the victims' rights to dignity and privacy will be respected without unduly burdening the defense team.[3]

Gomez, however, asserts that the Court should deny the motion because Congress chose not to bar defense-initiated contact with victims. (Doc. 16 at 4–5.) In so asserting, Gomez relies on *Mertens v. Hewitt Associates* (*id.*), which notes the Supreme Court's refusal to "infer causes of action in [a statute]" because the "statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly,'" 508 U.S. 248, 254 (1993) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47 (1985)) (emphasis in original). *Mertens* is misplaced here, as 18 U.S.C. § 3771(a)(8) creates broad rights for victims. This Court's Order gives meaning to those rights—consistent with Congressional intent.

Gomez also suggests that the Court need not grant the motion because "[e]xisting rules adequately protect" the rights of victims and Respondents lack evidence that the defense team "will violate any victim's dignity in any interview process." (Doc.16 at 8–9.)

---

[3] The Court rejects Respondents' claims that "Gomez has no right to discovery in habeas" and thus granting their motion would "not affect any of Gomez's due process rights" or "significantly impede [his] ability to investigate his claims, particularly where he should raise in his habeas petition only claims that were properly exhausted in state court." (Doc. 15 at 5–6.) Gomez has not asked the Court for formal discovery, and situations exist when "a petitioner may investigate, discover, and present new evidence to overcome the procedural default or a previously exhausted claim. . . ." *See Forde v. Shinn*, No. CV-21-00098-TUC-SHR, 2021 WL 2555430, at *4 (D. Ariz. June 22, 2021) (describing those situations).

*See* Ariz. R. Prof. Resp. 3.5 (forbidding counsel to use "means that have no substantial purpose other than to embarrass, delay, or burden any other person, or use methods of obtaining evidence that violate the legal rights of such a person"); *see also* LRCivP 83.2(e) (applying this rule to these proceedings). While the Court has no doubt that Gomez's defense team will follow Arizona's Rules of Professional Conduct, these rules do not contradict the Court's finding that granting the motion furthers 18 U.S.C. § 3771(a)(8).

Finally, the Court rejects Gomez's argument that the requested order would constitute a prior-restraint on his counsel's First Amendment rights by "foreclosing meaningful investigation and effectively barring victim contact." (Doc. 16 at 7, 9.) "[A]ttorneys are properly subject to an array of different restrictions and regulations that can have the effect of limiting their ability to obtain information—even potentially exculpatory information from prospective witnesses." *See Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2018 WL 6573228, at *6 (D. Ariz. Dec. 13, 2018) (citing Ariz. R. Prof. Conduct 4.1(a) and 4.2; LRCiv 39.2(b)); *see also*, *e.g.*, *Reeves*, 2021 WL 5771151, at *6 (rejecting the argument now raised by Gomez based on *Johnson*, 2018 WL 6573228). Besides, the requested order does not bar Gomez's defense team from asking to interview victims; it only requires the team to channel such requests through Respondents' counsel. Also, Gomez has not shown how this requirement, as opposed to asking the victims themselves, would deter the victims' consent. The requested order, as mentioned, permits victim-interviews if the victim consents, and if the victim does not consent, the order allows Gomez's counsel, through leave of the Court, to request the Court's permission to interview the victim. The requested order, in sum, does not place a prior restraint on the First Amendment rights of Gomez's counsel.

Accordingly,

**IT IS ORDERED** granting Respondents' Motion for No Juror Contact Absent Good Cause (Doc. 14). Neither Gomez nor his defense team may contact any juror absent leave of Court based on a showing that extraneous prejudicial information or outside influence was improperly brought to the jury's attention, or where there is evidence of

racial stereotypes or animus affecting a verdict or sentence.

**IT IS FURTHER ORDERED** granting Respondents' Motion to Preclude Victim Contact (Doc. 15). Gomez's defense team shall channel any request to contact a victim in this case, as defined in 18 U.S.C. § 3771(b)(2)(D), through Respondents' counsel or, if an attorney represents the victim, through that attorney. Neither Gomez nor his defense team may contact a victim unless the victim, through counsel for Respondents or the victim's attorney, has consented to such contact. If the victim does not consent to such contact but Gomez's defense team believes contact is necessary, Gomez may file a motion with the Court explaining the necessity for such contact and further addressing the applicability of Arizona's provisions governing the rights of victims.

Dated this 28th day of February, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge